UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVING SENIORS CARE, INC., and RAQUEL HECK,<br><br>    Plaintiffs,<br><br>  v.<br><br>SERRATORE-REBONG GROUP OF COMPANIES CORP,<br><br>    Defendant. | No. C 23-02333 WHA<br><br>**ORDER RE MOTIONS TO REMAND AND TO DISMISS AND TRANSFER VENUE** |

**INTRODUCTION**

This action concerns a dispute over financial accounting services between a provider and its clients. Plaintiffs assert contract breach and fraud claims alleging that they overpaid for services provided by defendant. Defendant removed this action, and plaintiffs now move to remand. Because this district court may properly assert subject-matter jurisdiction over this action, plaintiffs' motion is **DENIED**. Defendant also moves to transfer venue and dismiss plaintiffs' fraud claims, which, for the reasons below, are **DENIED** and **GRANTED**, respectively.

**STATEMENT**

Plaintiff Serving Seniors Care, Inc. is a California corporation, of which plaintiff Raquel Heck, also a California resident, is the CEO. Defendant Serratore-Rebong Group of Companies Corp. is a Nevada corporation. According to our complaint, Serving Seniors hired Serratore-Rebong to prepare and file tax returns and facilitate a Paycheck Protection Program

1  loan.  Plaintiff Heck likewise hired defendant to prepare and file her tax returns and prepare a

2  loan application.  Plaintiffs allege that defendant's CEO, Jean Serratore, falsely represented

3  that she is a Certified Public Accountant, and that defendant overstated the amount of hours

4  billed for services rendered.  Plaintiffs allege that Serratore-Rebong refuses to provide

5  "documentation necessary to evaluate whether and in what amounts Defendant has

6  overcharged."  Plaintiffs thus each assert two claims of contract breach and fraud, claiming that

7  they each have been overcharged by Serratore-Rebong "in an amount which, upon information

8  and belief, does not exceed $75,000" (Compl. ¶¶ 7–18).

9      This action was filed in San Mateo County Superior Court on April 6, 2023.  Defendant

10  removed the action to this district court on May 12, 2023, asserting diversity jurisdiction

11  pursuant to 28 U.S.C. § 1332.  Shortly thereafter, defendant filed a motion to dismiss the fraud

12  claims and to transfer venue to the District of Nevada.  Plaintiffs then filed a motion to remand

13  for failing to meet the amount-in-controversy requirement under diversity jurisdiction.  There

14  is a related action pending in Nevada state court where Serratore-Rebong has sued our

15  plaintiffs for unpaid invoices regarding the same services at issue here.  That action was filed

16  subsequent to this one.  The Nevada action is currently stayed pursuant to stipulation, pending

17  the outcome of the instant motions (Dkt. No. 26 at 3).  Both motions have been fully briefed,

18  and this order follows oral argument on both motions.

**ANALYSIS**

20      **1.   MOTION TO REMAND.**

21      Whether the amount-in-controversy requirement has been met is solely dispositive of

22  plaintiffs' motion to remand.  Section 1332(a) states that "district courts shall have original

23  jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

24  $75,000, exclusive of interest and costs."  Our complaint states that each plaintiff seeks no

25  more than $75,000.  Defendant points out that because both plaintiffs were invoiced together

26  given that Heck was CEO of Serving Seniors, the amount in controversy should be the

27  aggregate of both plaintiffs' claims (Remand Opp. 2–3).  However, our complaint specifies

28  that defendant performed different services for each plaintiff (Compl. ¶¶ 10, 15).  There is no

"common and undivided interest" that forms a "single title or right," and thus plaintiffs "who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) (citations omitted). "[S]imply because claims may have 'questions of fact and law common to the group' does not mean they have a common and undivided interest." *Ibid.* (quoting *Potrero Hill Cmty. Action Comm. v. Hous. Auth. of S.F.*, 410 F.2d 974, 977 (9th Cir. 1969)). Here, each plaintiff's claim is considered separately in determining the amount in controversy.

Our court of appeals has "identified at least three different burdens of proof which might be placed on a removing defendant" to show that the amount-in-controversy threshold for removal has been met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Relevant here, a preponderance of the evidence standard applies "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled." *Ibid.* (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). Alternatively, defendants must prove the amount in controversy to a "legal certainty" when "a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold." *Ibid.* (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007)). Plaintiffs argue that the latter standard applies, while defendant argues for the former.

Our complaint is ambiguous as to whether the amount in controversy has been met. *Lowdermilk* assessed an amount-in-controversy pleading in the Class Action Fairness Act context, and the theory underpinning that decision within that context "no longer holds true." *See Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594–95 (2013)). In any event, *Lowdermilk* itself explains that "[w]e have reserved the preponderance of evidence standard for situations where a plaintiff 'seeks no specific amount in damages,' . . . and a court is forced to look beyond the complaint to determine whether the suit meets the jurisdictional requirements." *Lowdermilk*, 479 F.3d at 998 (citation omitted). Our complaint meets that description.

The complaint in *Guglielmino* — which found that the preponderance of evidence standard applied — similarly alleged that "[t]he damages to each Plaintiff are less than $75,000." *Guglielmino*, 506 F.3d at 700. The problem was, among other things, that the damages allegations "d[id] not take account of attorneys' fees" which "do not fall comfortably within the realm of 'damages' and are not labeled as such in the Prayer for Relief." *Id.* at 701. Because "recovery of these sums would entail a payment by [defendant]," our court of appeals was "convinced that they must be included within any amount-in-controversy calculation" and that "the complaint fail[ed] to allege a sufficiently specific total amount in controversy" as a result. *Ibid.* So too here.

Plaintiffs attempt to distinguish *Guglielmino* by arguing that their prayer for relief "requests no other specific type of relief, such as attorneys' fees, that is not included in the damages already alleged as not exceeding $75,000" (Remand Mot. 7). First, *Guglielmino* was not decided solely on the basis that the $75,000 limitation was not repeated in the prayer for relief. Rather, as explained above, the real issue was that it did not sufficiently account for recovery that should be considered part of the amount in controversy. *See Guglielmino*, 506 F.3d at 700–01. Second, our complaint's prayer requests "compensatory damages" for each plaintiff that is limited to $75,000, but then separately contemplates unspecified "other proper relief," suggesting potential recovery not accounted for by the $75,000 damages limitation for each plaintiff. Third, this district court requested clarification on this exact point, that is whether plaintiffs' $75,000 limit each includes *all* contemplated recovery exclusive of costs (and inclusive of reasonable attorney's fees). Plaintiffs' response waffled, stating only that "[t]he Complaint contains no reference to or request for attorney's fees or expenses" and that it was nevertheless defendant's burden (Dkt. No. 27 at 3). This order thus finds that "[t]he uncertainty which is inherent in [plaintiffs'] Prayer for Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant." *Guglielmino*, 506 F.3d at 701 (citing *Sanchez*, 102 F.3d 398, 404 (9th Cir. 1996).

4

To sustain its burden, defendant points to its complaint and accompanying exhibits in the Nevada action that it filed in this action as part of its notice of removal (Remand Opp. 6–7). Defendant asserts that the unpaid amounts on invoices billed to plaintiffs (which form the basis of its claims against plaintiffs in the Nevada suit) constitute part of the amount in controversy in this action. Not so. "[T]he amount in controversy includes *all* relief to which the *plaintiff is entitled* if the action succeeds." *Fritsch v. Swift Transportation Co. of Ariz.*, LLC, 899 F.3d 785, 795 (9th Cir. 2018) (second emphasis added) (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018)). What defendant points to is a compulsory counterclaim, because it is defendant's own claim against plaintiffs that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FRCP 13(a)(1)(A). Plaintiffs' complaint does not seek relief from or mention any outstanding invoices or amounts owed. Our complaint seeks recovery of overpayment, which by definition does not include amounts unpaid. This order "agrees with the courts that have taken the position that counterclaims cannot be used to satisfy the amount-in-controversy requirement in removed cases." *See Rla v. Cape Cod Biolab Corp.*, No. C-01-3675 PJH, 2001 WL 1563710, at *3 (N.D. Cal. Nov. 30, 2001) (Judge Phyllis J. Hamilton) (collecting cases); *Breckenridge Prop. Fund 2016, LLC v. Gonzalez*, No. 17-CV-03915-JCS, 2017 WL 3381155, at *3 (N.D. Cal. Aug. 7, 2017) (Judge Joseph C. Spero) (same).

However, by that same token, defendant's evidence does illuminate amounts that *have* been paid by plaintiffs, a portion of which our complaint seeks to recoup. This includes a letter from plaintiffs' counsel to defendant explaining that plaintiffs (along with three other individuals) "have already paid Serratore over $1.2 million its [sic] services over the past four years" (Nevada Compl. Exh. 6, Dkt. No. 3-3 at 39). Various invoice summaries list specific amounts paid for specific time periods: for example, a document titled "2020 Invoice Summary" shows "Payments received from January 2022 to September 30 2022 (SSC)" as $126,000 (Nevada Compl. Exh. 3, Dkt. No. 3-3 at 21). Likewise, a "2019 Invoice Summary" shows "LESS PAYMENTS Mar 2021 to Sep 2021" as $91,000 (Nevada Compl. Exh. 2, Dkt. No. 3-3 at 15). While our complaint limits each plaintiffs' overpayment claims to just

$75,000, it is likely that in light of the foregoing figures, the amount in controversy is significantly closer to that limit than not.

Furthermore, defendant asserts that an engagement letter it sent to Serving Seniors dated May 16, 2019, consists of the contract governing the services at issue (Dkt. No. 26 at 1–2). That letter states: "In the event that any action is required to collect unpaid balances due us, you agree to reimburse us for our costs of collection, including attorneys' fees" (Nevada Compl. Exh. 1, Dkt. No. 3-3 at 11). Defendant argues that "California statutory authority deems contractual attorney's fee provisions mutual and non-waivable," which is why attorney's fees must be considered as part of the amount in controversy here (Dkt. No. 26 at 2–3). Indeed, "Section 1717 [of the California Civil Code] was enacted to provide for a mutuality of remedy when a contract makes recovery of attorneys' fees available only to one party." *Farmers Ins. Exch. v. L. Offs. of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001) (citing *Trope v. Katz*, 902 P.2d 259, 267 (Cal. 1995)). Without deciding the merits of whether Section 1717 properly applies to that provision, let alone whether a valid contract exists in this action, this order finds it more likely than not that attorney's fees are properly at stake as part of the amount in controversy.

Given the foregoing conclusions drawn from the evidence proffered, defendant has shown by a preponderance of the evidence "it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Guglielmino*, 506 F.3d at 699 (quoting *Sanchez*, 102 F.3d at 404). The amount plaintiffs have already paid defendant shows the amount at stake to be at least at the upper bound of plaintiffs' alleged limits of $75,000, and would be beyond it but for plaintiffs' forswearing relief over that amount. Even a relatively minimal attorney's fees award would easily push the amount in controversy over $75,000 on either plaintiff's claims, satisfying the requirement for jurisdiction under Section 1332(a). Remand is thus **DENIED**.

2. **MOTION TO TRANSFER.**

Defendant moves to transfer this action to its home state of Nevada. Pursuant to 28 U.S.C. § 1404(a), an action may be transferred to another district "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it

6

might have been brought." Venue is proper in a judicial district where "a substantial part of the events . . . giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). If the proposed venue is proper, the district court may consider the following list of factors to determine whether to grant a motion to transfer venue under Section 1404(a):

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (Judge Vaughn R. Walker) (citing *Royal Queentex Enterprises v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *2 (N.D. Cal. Mar. 1, 2000) (Judge Martin J. Jenkins)). "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel*Link Corp.*, No. 15-CV-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015) (Judge Yvonne Gonzalez Rogers) (citations omitted). Whether transfer is appropriate is a decision well within the broad discretion of the district court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (quoting *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

There can be no reasonable dispute that venue would be proper in Nevada. Our complaint alleges that defendant is a Nevada corporation, and defendant asserts that the accounting services at issue in this action were "performed by employees physically located in the State of Nevada" (Dismiss & Transfer Mot. 5). Plaintiffs contest transfer, but do not otherwise argue that Nevada would be an improper venue. As such, this order finds that venue is proper in the District of Nevada.

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "For purposes of a section 1404(a) analysis, the plaintiff's choice of forum always weighs against transfer. Thus, the question for the Court is how much weight to give this choice relative to the

7

1   other factors." *Martin*, 2015 WL 2124379, at *4 (collecting cases).  Both plaintiffs here are
2   California residents.  "[A] plaintiff's choice of forum is entitled to greater deference when the
3   plaintiff has chosen the home forum." *Piper Aircraft Co.* 454 U.S. at 255 (citing *Koster v.*
4   *(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).  Nevertheless, a plaintiff's
5   choice of forum is not always weighed heavily:  "Circumstances in which a plaintiff's chosen
6   forum will be accorded little deference include cases of anticipatory suits and forum
7   shopping." *Royal Queentex Enterprises*, 2000 WL 246599, at *3 (citation omitted).  There are
8   no allegations of such gamesmanship here.  As such, this order defers to California plaintiffs'
9   choice to sue in California.

10  Given the foregoing, "defendant must make a strong showing of inconvenience to
11  warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison*
12  *Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Defendant has not done so.  Defendant's arguments
13  favoring transfer are, in essence, that defendant is located in Nevada.  That the relationship was
14  initially engaged, work was performed, and records and witnesses are available all in Nevada is
15  nothing more than the practical reality of defendant being located there.  The convenience
16  factors are illustrative:  Transfer to Nevada would convenience defendant and defendant's
17  witnesses but create the same, countervailing inconveniences to plaintiffs that defendant now
18  faces.  Defendant does not assert that a choice-of-law provision applies, and instead argues
19  only that California choice-of-law principles would lead to application of Nevada law for what
20  are breach-of-contract and common law fraud claims asserted under California law.  It is
21  unnecessary to speculate that far, and this order finds that this forum's interest in the
22  grievances of California residents outweighs in any event.  Defendant has not provided reasons
23  sufficient to overcome the deference owed to California plaintiffs' choice to sue in California.
24  Defendant's motion to transfer venue is **DENIED**.

25  **3.    MOTION TO DISMISS FRAUD CLAIMS.**

26  Defendant also moves to dismiss both plaintiffs' fraud claims pursuant to Rule 12(b)(6)
27  because they fail to meet the heightened pleading requirements of Rule 9(b).  Indeed,
28  allegations sounding in fraud are subject to those requirements.  *See, e.g.*, *Hess v. Wells Fargo*

8

*Bank, N.A.*, No. C-12-5799 JSC, 2013 WL 791494, at *4 (N.D. Cal. Mar. 4, 2013) (Judge Jacqueline Scott Corley) (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010)). Our court of appeals has read Rule 9(b)'s requirement that a pleading "state with particularity the circumstances constituting fraud" to mean it must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). To that end, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs' lack of specificity in their complaint proves fatal to their fraud claims as pled. Plaintiffs' fraud claims simply state that defendant falsely represented it "had reasonably and actually expended the hours it stated it had expended in providing services" (Compl. ¶¶ 26, 40). It does not specify where and how these representations were made, for example whether it is via the invoices received or some other correspondence, or both. Our complaint does not specify whether the fraudulent representation is for all of the hours defendant ever said it expended, or just some subset of those hours. Identifying specific bills or invoices at issue — even if it is all of them — would provide "more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations'" that Rule 9(b) requires. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.2004)).

To explain the dearth of information, plaintiffs assert that defendant has refused to provide "documentation necessary to evaluate whether and in what amounts Defendant has overcharged" (Dismiss & Transfer Opp. 4). Our court of appeals "has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Applied here, it means that plaintiffs are not required to plead which specific hours billed are suspect if they were never provided a breakdown of

billings, for example. That is because "[i]n such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Ibid.* (citations omitted).

What plaintiffs are nevertheless required to do however, is "set forth what is false or misleading about a statement, and *why it is false*." *Vess*, 317 F.3d at 1106 (emphasis added) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Here, it is not unreasonable to expect plaintiffs who dealt directly with defendant "to have personal knowledge of the relevant facts" regarding why they believe the invoices they received reflect fraudulent charges. *Sanford*, 625 F.3d at 558 (citing *Neubronner*, 6 F.3d at 672). Excusing plaintiffs from pleading pertinent facts held solely by the opposing party "does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner*, 6 F.3d at 672. Merely stating that plaintiffs believe they have been overcharged is an insufficient pleading for fraud.

The complaint's assertion that defendant falsely represents its CEO as a Certified Public Accountant does not rescue the deficient fraud pleadings. The actual claims themselves mention only that the hours expended were false. There is no specification for where or how that representation was made on defendant's website, nor when or what the CEO represented to plaintiffs directly. Moreover, our complaint has not pled how or why the CPA qualification factors into the fraud claim at all. "To state a claim for common law fraud under California law, plaintiff must allege 'misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage.'" *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2011 WL 5573837, at *4 (N.D. Cal. Nov. 15, 2011) (Judge Susan Illston) (quoting *Gil v. Bank of Am., N.A.*, 42 Cal. Rptr. 3d 310, 317 (Cal. Ct. App. 2006)). This order will not speculate as to how that alleged falsehood fits into plaintiffs' fraud theories. Defendant's motion to dismiss plaintiffs' fraud claims is **GRANTED**.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is **DENIED**. Defendant's motion to transfer venue is **DENIED**, and defendant's motion to dismiss is **GRANTED**. Plaintiffs may seek leave to amend their complaint and shall have **FOURTEEN CALENDAR DAYS** from the date

10

of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should explain how the amendments to the complaint cure the deficiencies identified herein, as well as any others raised in defendant's briefs.

**IT IS SO ORDERED.**

Dated: July 17, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE